UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHANDI LESURE,

Plaintiff,

v.

Case No. 21-cv-472-pp

WALMART INC.,

Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (DKT. NO. 12) AND DISMISSING CASE**

---

The plaintiff, a Black woman, filed a complaint in this district alleging that she entered the defendant's store in Plymouth, Indiana on August 9, 2020, purchased some items and was stopped by a security officer as she tried to leave the store. Dkt. No. 1. Although she was allowed to purchase the items and exit the store, the amended complaint alleges that the plaintiff was disproportionately monitored while in the store and that the defendant's security failed to place items back in her bag after checking it. Dkt. No. 11. She further alleges that the defendant's agents called law enforcement to report her as a shoplifter. Id.

The defendant filed a motion to dismiss, arguing that the plaintiff's two causes of action fail to state a claim. Dkt. No. 13 at 2. The defendant argues that the plaintiff's §1981 claim fails because she never was denied entry to the store or prevented from purchasing goods or services on account of race. Id.

The defendant argues that the plaintiff's defamation claim fails because the statements to law enforcement are privileged and she has not alleged any facts that would satisfy the malice element of a defamation claim. Id. at 11-15. The court will grant the defendant's motion and dismiss the case.

## I. Factual Background

The plaintiff filed the original complaint on April 14, 2021; she was represented by counsel. Dkt. No. 1. The first four pages of that document consisted of quotes and facts allegedly taken from media and law review articles. Id. at 1-4. The complaint alleged that in August 2020, the plaintiff participated in a march by "caravan" from Milwaukee to Washington, D.C. Id. at ¶5. The march passed through Indiana, and on August 9, 2020 the plaintiff went to a Walmart in Plymouth, Indiana to purchase some items. Id. at ¶¶6-7. It alleged that while the plaintiff was shopping, she was "given disproportionate scrutiny by [the defendant's] security, management and employees and which was disproportionate to that experience by her fellow white consumers at that same time and place." Id. at ¶11. The plaintiff tried to leave the store after making her purchases; the complaint alleged that she was the "only black person leaving the store and also the only shopper who was stopped by management to have her purchases inspected before leaving." Id. at ¶13. When the plaintiff asked why she was being stopped, she was told by the manager that it was "company policy." Id. at ¶14. The plaintiff alleged that she then was accused of being a shoplifter and that the defendant's employees caused her to empty her shopping bags, while "white shoppers exited without being stopped,

or having their purchases inspected or receipts checked." Id. at ¶¶15-16. The defendant then called law enforcement to report the plaintiff as a shoplifter. Id. at ¶17.

The original complaint alleged a violation of 42 U.S.C. §1981, id. at page 8, and a "[p]endent" state law claim of defamation, id. at page 9.

On May 11, 2021, rather than answering the complaint, the defendant filed a motion to dismiss. Dkt. No. 7. The court issued an order reminding the plaintiff that, in lieu of responding to that motion to dismiss, the plaintiff could file an amended complaint; the court gave the plaintiff a deadline of June 1, 2021 to either respond to the motion or file an amended complaint. Dkt. No. 10. On that date, the plaintiff filed an amended complaint. Dkt. Nol. 11.

The "Jurisdiction" section of the amended complaint alleged that this court had jurisdiction "under the provisions of the Fair Credit Reporting Act 15 U.S.C. 1681." Id. at 1, ¶1. The court assumes that this is a cut-and-paste failure; there are no facts in the complaint that could support a FCRA claim. The amended complaint stated that the court "also has jurisdiction to adjudicate this Federal Question under 42 U.S.C. 1981." Id. at 1, ¶3. The amended complaint asserts that venue is proper in the Eastern District of Wisconsin "because the Defendants[1] conduct regular and systematic business activity within Milwaukee County in The State of Wisconsin." Id. at ¶4.

[1] The amended complaint refers to defendants but has sued only a single defendant: Walmart, Inc. Dkt. No. 11 at ¶¶4, 6.

As she did in the original complaint, the plaintiff alleges in the amended complaint that she joined a group of Black activists to march from Milwaukee, Wisconsin to a rally in Washington D.C. in August of 2020. Id. at ¶8. While passing through Plymouth, Indiana, the plaintiff decided to visit the defendant's store at 255 N. Oak Drive in Plymouth. Id. at ¶10. She felt that she was "given disproportionate scrutiny by [the defendant's] store security, management and employees which was disproportionate to that experienced by her fellow white consumers at that same time and place." Id. at ¶13. When the plaintiff checked out, an employee scanned and bagged the items the plaintiff purchased. Id. at ¶14.

The plaintiff left the checkout counter and headed for the exit. Id. at ¶17. According to the plaintiff, defendant's agents contacted law enforcement while she was checking out and falsely reported her as a shoplifter. Id. at ¶20. At that point, she was the only Black person leaving the store and the only one stopped by management to have her purchases removed from her shopping bags and left in a cart before being asked to leave. Id. at ¶22. When the plaintiff asked why she was the only person stopped and had her purchases inspected and why white customers exited freely, she was told it was company policy. Id. at ¶23. She claims she was accused of being a shoplifter, both at checkout and at the exit to the store. Id. at ¶24. She again alleges that the defendant's employees caused her merchandise to be removed from her shopping bags, in contrast to white customers who left the store without being stopped or having their purchases checked. Id. at ¶25.

The plaintiff alleges that after the defendant's agents "identified a racially based policy to [the plaintiff]," they removed her merchandise from the bags, placed the items in an open cart and told her to leave without helping her re-bag the items. Id. at ¶26. She says the bagging of the purchases is a condition precedent to a consumer purchase. Id. at ¶27. The plaintiff asserts that she has a right to enforce her contract for bagged merchandise, but that she was prevented from doing so because the store demanded that she leave without "the convenience of bagging her immediate purchases." Id. at ¶29. The plaintiff alleges that this "deprived" her of "her right to enforce the contract which she had entered into with [the defendant] for the purchase of consumer goods." Id. at ¶28.

The plaintiff further alleges that "upon information," the defendant's agents reported to a "Local Newspaper" that the plaintiff had committed shoplifting offenses, which was not true. Id. at ¶34. The plaintiff alleges upon information and belief that based on the defendant's agents having contacted local law enforcement to report the plaintiff as a shoplifter, the "Local Newspaper published that [the plaintiff] had committed shoplifting offenses, which was not true." Id. at ¶35. The plaintiff characterizes these statements as defamatory statements that were not true, and says that the defendant published them to third parties. Id. at ¶36. This allegedly cause the plaintiff apprehension and stress that "acts as a prohibition on any future consumer transaction(s) she may wish to enter into with [the defendant]." Id. at ¶37. The plaintiff says that the defendant doesn't have a race-neutral explanation for its

policy of screening only Black consumers, id. at ¶38, and says that the defendant refused her the same level of service it provides to white customers, "thereby interfering with her right(s) to contact for the purchase of goods at the same level as a white customer." Id. at ¶39.

The amended complaint alleges racial discrimination by a commercial establishment under 42 U.S.C. §1981. Id. at page 6. The plaintiff says that she was deprived of services that similarly-situated persons outside the protected class enjoyed, she received services in a markedly hostile manner, and that the conduct was outside accepted business norms and arbitrary on its face. Id. at ¶43. She further alleges that the defendant acted with reckless indifference to her federally-protected rights. Id. at ¶44. The amended complaint, like the original complaint, also asserts a pendent state law claim for defamation. Id. at page 7. The plaintiff says that the defendant, by its management, made a false statement or a set of false statements, with express malice and/or reckless disregard for the truth (that the plaintiff was a shoplifter). Id. at ¶47. The plaintiff also alleges that management made the false statements with ill will and/or bad intent and that those statements were communicated to others in speech or conduct and they were not privileged. Id. at ¶48.

The plaintiff seeks damages for emotional harm and special damages under Rule 9(g) in the amount of $6,325,500 (.005% of Wal-Mart's 2018 Gross Income of $126.51 billion) for the §1981 claim and general and punitive damages for the defamation claim. Id. at 7, 8.

The defendant filed a motion to dismiss the amended complaint less than three weeks after the plaintiff filed it. Dkt. No. 12. The plaintiff filed a brief in opposition, dkt. no. 15, and the defendant filed a reply in support, dkt. no. 16.

## II. Legal Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." Haywood v. Massage Envy Franchising, LLC, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). See also Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts the plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. Fortres Grand Corp. v. Warner Bros. Entm't, Inc., 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." Bell v. City of Chi., 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

## III. Analysis

### A. Section 1981 Claim

The defendant asserts that the plaintiff has not alleged that she was denied entry into a retail establishment or the opportunity to purchase merchandise. Dkt. No. 13 at 5. It argues that §1981 does not provide a general cause of action for racial discrimination in the retail context. Id. (citing Morris v. Office Max, 89 F.3d 411 (7th Cir. 1996)). The defendant maintains that in Morris, the Seventh Circuit explained that in order to state a §1981 claim, a plaintiff must show (1) that he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated under the statute. Id. at 6 (quoting Morris, 89 F.3d at 414). The defendant points out that the Seventh Circuit has held that any claim for interference of the right to make or enforce a contract must involve an actual loss of a contract interest—not the mere possibility. Id. (quoting Morris, 89 F.3d at 414-415). The defendant argues that to the extent that the plaintiff tried to argue that Morris did not foreclose her §1981 claim, this court's decision in Easley v. Sally Beauty Supply, No. 18-C-1803, 2020 WL 6161308, *2 (E.D. Wis. Oct. 21, 2020) has done so. Id. at 6-7. The defendant contends that taken together, the various cases it cites demonstrate that to state a claim under §1981 a plaintiff must allege more than increased surveillance or a failure to re-bag the merchandise after a security stop. Id. at 9.

The plaintiff responds that she can state a §1981 claim because: (1) she is Black; (2) she was subject to "disproportionately lower treatment which either directly shows or indirectly tends to show an intent by the defendant to

discriminate on the basis of race, by way of stated policy;" and (3) the defendant interfered with the bagging of her purchases after they were dumped out into her cart. Dkt. No. 15 at 8. She distinguishes Morris on the ground that the defendant failed to provide her all the "benefits, privileges, terms and conditions" of a consumer contract when they dumped her purchases out of the bags into a cart, called the police and asked her to leave. Id. at 9-10. She argues that the facts of her case are more analogous to the facts of McCaleb v. Pizza Hut of America, 28 F. Supp. 2d 1043 (N.D. Ill. 1998), where the customers were not provided with plates, utensils or soft drinks. Id. at 8-9. The plaintiff says the court can infer racial animus from the fact that the manager told her she was being stopped because of company policy, coupled with the "disproportionate scrutiny" and the calls to the police and the newspaper. Id. at 10. The plaintiff insists that the bags provided to customers are an "accoutrement of convenience," much like plates in a restaurant. Id. at 11.

In its reply brief, the defendant argues that the plaintiff fails to address most of its arguments and authority and noticeably fails to address Easley, which was litigated by the plaintiff's own counsel. Dkt. No. 16 at 1. The defendant asserts that the plaintiff instead relies on a restaurant case from a district court holding that the denial of "accoutrements" gives rise to a §1981 claim. Id. at 1-2. The defendant says that there is no case extending the "accoutrements" holding beyond the restaurant context. Id. at 2. The defendant also asserts that in McCaleb, the plaintiffs sought to buy soft drinks and were denied, while the white customers were sold soft drinks shortly before the

plaintiffs were denied the opportunity to buy them. Id. at 3. The defendant asserts that in contrast, the plaintiff in this case completed her purchase transaction at the time she was "temporarily stopped" as she was leaving the store. Id. The defendant asserts that because the plaintiff never was denied admittance or the opportunity to purchase items, she cannot bring a claim under §1981. Id.

The defendant also argues that the plaintiff has provided no authority for her claim that re-bagging of items after a security stop is a logical component of a purchase transaction, and that its employees did place the plaintiff's items into a shopping cart after the security stop. Id. at 3-4. The defendant argues that, unlike the unambiguous and racially offensive comments in McCaleb, the plaintiff has not alleged that the defendant made racially offensive statements or said anything more than that the stop was "company policy." Id. The defendant finds "curious" the fact that the plaintiff did not address or acknowledge the Easley decision from less than a year ago. Id. at 5. The defendant argues that Easley shows that the plaintiff cannot demonstrate the making or enforcement of a contract. Id. at 5-6. And the defendant argues that nothing about the manager's statement that the search was "company policy" demonstrates an intent to discriminate. Id. at 6.

Section 1981 states, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . . as is enjoyed by white citizens . . ." 42 U.S.C. §1981(a). The statute defines "make and enforce contracts" as

including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §1981(b). The United States Supreme Court has interpreted §1981 as "providing a broad-based prohibition (and federal remedy) against racial discrimination in the making and enforcing of contracts." Humphries v. CBOCS West, Inc., 474 F.3d 387, 393 (7th Cir. 2007), aff'd 553 U.S. 442 (2008). To state a claim under §1981, plaintiffs must plead that "(1) they are members of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making and enforcing of a contract)." Morris, 89 F.3d at 413-14.

Morris involved similar facts to the facts the plaintiff has alleged; two Black men entered an Office Max store in Orland Hills, Illinois, to purchase office supplies. Id. at 411-12. Within minutes of entering the store, the assistant manager called the local police department to report "two male blacks acting suspiciously." Id. at 412. Police officers were dispatched, but before they arrived, one of the plaintiffs had purchased telephone message pads. Id. He returned to the other plaintiff, who was in another area of the store looking at time-stamp machines. Id. The police officers arrived, questioned the plaintiffs and asked them to provide their drivers' licenses before apologizing to the men and leaving the store. Id. Before they left, one of the officers allegedly said, "[G]uys, unfortunately you are guilty by association." Id. The plaintiffs accused the manager of calling the police because they were Black; the manager replied

that she had done so because of recent thefts. Id. The men left the store without purchasing anything further, saying that the police had caused them to lose interest in purchasing the time stamps. Id. at 414.

The Seventh Circuit held that the plaintiffs had failed to establish that Office Max had deprived them of any of rights under §1981, including the right to make and enforce a contract. Id. The court noted that one of the plaintiffs had completed his transaction; the court found the argument that the plaintiffs were "discouraged and dissuaded" from making a potential additional purchase was unpersuasive. Id. The court acknowledged that the incident was "unfortunate and undoubtedly disconcerting and humiliating" but held that it did not violate the statute. Id. at 414-15.

Here, the plaintiff's allegations satisfy the first element of a §1981 claim: she alleges that she is Black. Next, she alleges that the defendant subjected her to disproportionate monitoring, which could indicate an intent to discriminate. But under the reasoning in Morris, the plaintiff has not sufficiently alleged that the store's conduct was related to one of the activities enumerated in 42 U.S.C. §1981, such as the making of a contract. Judge Adelman's discussion of this third prong in his decision in Easley makes clear that something more is required than a presumption that a member of a minority is a shoplifter:

> The Seventh Circuit has held that, in the retail setting, to show that discrimination involved the making or enforcement of a contract, the plaintiffs must show that store employees denied them admittance or service or otherwise prevented them from purchasing goods or services because of their race. *See Morris*, 89 F.3d at 414–15. In *Morris*, the plaintiffs were not denied admittance or service and were allowed to purchase items, but store employees believed that the plaintiffs were shoplifters and called the police. The Seventh Circuit

> held that, even if the store's action in calling the police was the product of racial discrimination, it would not amount to a violation of § 1981 because nothing the store did prevented the plaintiffs from making purchases.
>
> In the present case, the plaintiffs do not claim that [the defendant] denied them admittance or service or prevented them from purchasing whatever items they wished to purchase from the store. Instead, they contend that employees watched them closely to prevent theft. This case is therefore indistinguishable from *Morris*. In both cases, the discriminatory act was assuming that members of a racial minority were more likely to be shoplifters. Indeed, the store's action in *Morris* was arguably more degrading than [the defendant's] alleged conduct here, for in *Morris* the store called the police while [the defendant] only kept an eye on the plaintiffs and did not intervene in their shopping experience.

Easley, 2020 WL 6161308, at *2.[2]

The plaintiff, whose attorney is well-acquainted with Easley, glosses over that case and relies heavily on McCaleb. There are critical differences between this case and McCaleb, which involved a restaurant that failed to provide proper eating utensils or soft drinks while staff made racially offensive comments. Here, the plaintiff entered the store, made her purchases, received assistance in bagging her items, completed the transaction; she was questioned as she exited the building, *after* she had completed her retail transaction.

The plaintiff insists that she was subjected to disproportionate monitoring and treated as a shoplifter *before* she completed her transaction.

[2] Judge Adelman dismissed the case via summary judgment, but the reasoning is no less applicable. The defendant in Easley filed an answer rather than a motion to dismiss and the defendant moved for summary judgment because the undisputed facts showed that the plaintiffs had not been denied the ability to enter into retail contracts or to conduct the transactions that they sought. Easley, Case No. 18-cv-1803, Dkt. No. 26.

She also alleges that she was denied her right to assistance in re-bagging the items following her security check. The Northern District of Indiana dismissed a similar complaint at the pleading stage, where the Black plaintiff alleged that he made a purchase in a Walmart store and was asked—by a white employee—to empty his bag on a table at the front of the store as he tried to exit. Maxie v. Wal-Mart Store, No. 3:09-CV-260, 2009 WL 1766686, at *1 (N.D. Ind. June 19, 2009). The court reasoned that the plaintiff could not satisfy the third prong:

> The statute defines the phrase "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). But it does not include conduct occurring after the formation of the contract. See *Bishop v. Toys "R" Us–NY LLC*, 414 F. Supp. 2d 385, 392 (S.D.N.Y. 2006). Thus, courts have held that "there is no continuing contractual relationship," but rather "the relationship is based on a single discrete transaction—the purchase of goods." *Id.* (quotation marks omitted). *See also Range* [v. Wal-Mart Supercenter, No. 3:08 CV 09], 2008 WL 1701870, at * 3–4 [N.D. Ind. Apr. 8, 2008)]. In this case, [the plaintiff] has only made allegations satisfying the first and second requirements, but he has not alleged that [the defendant's] discrimination concerned the making or enforcement of a contract. [The plaintiff's] transaction was complete when the security guard stopped him, and [the plaintiff] was allowed to keep the items he purchased. In short, [the plaintiff's] complaint does not state a claim under § 1981 because nothing in the complaint suggests [the defendant] discriminated against him *with respect to making and enforcing a contract.*

Id. at *4.

This court has not located authority in this circuit treating a post-purchase stop as sufficient to state a claim under §1981. The plaintiff has not alleged sufficient facts to support a claim that the defendant discriminated against her with respect to making and enforcing a contract.

B. Defamation Claim

The defendant asserts that in considering whether to dismiss the defamation claim, the court must begin by determining which state's law to apply; the defendant asks the court to apply Indiana law because Indiana—the location of the store in which the events alleged in the amended complaint occurred—has the most significant contacts with the case. Dkt. No. 13 at 10-11. The defendant asserts that under both Wisconsin and Indiana law, there is "a privilege which acts as a defense against claims of defamation in connection [to] reports of a crime made to law enforcement." Id. at 11. The defendant says that this privilege applies even if the report turns out to be false. Id. The defendant cites the Indiana Shoplifting Detention Act, Ind. Code 35-33-6-2, which allows an owner or agent of a store (who believes a theft has occurred or is occurring and who has probable cause) to (1) detain the person and request identification; (2) verify identification; (3) determine whether the person has possession of unpurchased merchandise; (4) inform the appropriate law enforcement officers and (5) inform the parents or others interested in the person's welfare that the person has been detained. Id. at 12. The detention must be reasonable and not extend beyond the arrival of law enforcement or two hours (whichever is first). Id. The defendant asserts that the plaintiff has identified only one allegedly defamatory statement—"a report supposedly from agents of [the defendant] to law enforcement wherein Plaintiff was referred to as a shoplifter (Am. Compl. ¶ 17)." Id. at 14. It argues that this is exactly the kind of communication that the Indiana privilege is designed to protect. Id.

The defendant also argues that the plaintiff has not alleged sufficient facts to state a claim for defamation under Indiana law. Id. The defendant emphasizes that one of the elements of defamation under Indiana law is malice, and asserts that the plaintiff must plead sufficient facts that, if proven, would show that the communication was made with actual malice—knowledge of its falsity or reckless disregard as to whether it was false. Id. The defendant says that the amended complaint does not identify the person who allegedly called the plaintiff a shoplifter and does not allege that this person knew or should have known that it was not true that the plaintiff was a shoplifter. Id. at 15.

The plaintiff appears to agree that Indiana law applies to the defamation clam because she begins her argument in opposition by stating, "Under Indiana law," and then citing an Indiana case. Dkt. No. 15 at 12. Her entire response to the argument about the "pendant state law claim" appears in the following five sentences:

> Under Indiana law, in order to establish a "claim for defamation, a plaintiff must prove the existence of a communication with defamatory imputation, malice, publication, and damages (internal cites omitted). Any statement actional for defamation must not only be defamatory in nature but false." *Trail v. Boys and Girls Club of N.W. Ind. 845 N.E.2d 130, 136*. Here [the defendant], by its management, employees and/or agents made a defamatory communication to others that [the plaintiff] was a shoplifter, namely local law enforcement and a local newspaper. [The plaintiff] was not a shoplifter, therefore the statement was false. [The plaintiff] suffered reputational harm.

Dkt. No. 15 at 12.

In its reply brief, the defendant asserts that the plaintiff "has essentially abandoned her defamation claim by failing to address any of [the defendant's]

arguments." Dkt. No. 16 at 7. The defendant argues that the only case cited by the plaintiff supports *the defendant's* arguments, because the court dismissed the case for (among other things) failure to plead facts establishing actual malice and because the court recognized that privilege is a cognizable defense to a defamation claim under Indiana law. Id. at 8. According to the defendant, merely pleading someone made false statements about her with "express malice and/or reckless disregard for the truth" is insufficient to meet the plaintiff's pleading obligation. Id.

The plaintiff labeled the defamation claim a "pendent state law claim for defamation." Dkt. No. 11 at 7. Defamation is, as the parties' arguments recognize, a state-court cause of action. Under 28 U.S.C. §1367, a federal court may exercise "supplemental jurisdiction" over state law claims when it has original jurisdiction over the case and the state-law claim is "so related to claims in the action within such original jurisdiction that" the state-law claim "form[s] part of the same case or controversy under Article III of the United States Constitution." On the civil cover sheet she filed with the original complaint, the plaintiff marked the box indicating that the court had jurisdiction because the case involved a federal question. Dkt. No. 1-1 at 1. In the amended complaint, the plaintiff alleges that the amended complaint states a claim under federal law. Dkt. No. 11 at ¶1. The plaintiff also cites "28 U.S.C. Sections 1331 and 1343" and alleges the court has jurisdiction under 42 U.S.C. §1981. Id. at ¶¶2, 3. Section 1331 is the federal question jurisdiction statute. Section 1343 gives district courts original jurisdiction over civil cases

filed under 42 U.S.C. §1985, equal rights cases under 42 U.S.C. §1983 and suits to "recover damages . . . under any Act of Congress providing for the protection of civil rights."

The plaintiff has alleged that the court has original jurisdiction over the case because the case involves a federal question—an alleged violation of 42 U.S.C. §1981. If the amended complaint had stated a claim for a violation of 42 U.S.C. §1981, the court could have exercised supplemental jurisdiction over any state-law claim so related to that claim that it formed part of the case or controversy. But the court has concluded that the amended complaint does not state a claim for a violation of 42 U.S.C. §1981; it is dismissing the only federal claim in the amended complaint. "The general rule, when the federal claims fall out before trial, is that the [district court] should relinquish jurisdiction over any supplemental (what used to be called 'pendent') state law claims in order to minimize federal judicial intrusion into matters of purely state law." Burritt v. Ditlefsen, 807 F.3d 239, 252 (7th Cir. 2015) (quoting Carr v. CIGNA Secs., Inc., 95 F.3d 544, 546 (7th Cir. 1996)). "[O]nly in 'unusual cases' may a district court exercise its discretion to assert its supplemental jurisdiction based upon the balance of factors of 'judicial economy, convenience, fairness and comity.' *Wright v. Associated Ins. Companies, Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)." This is not an "unusual case," which means that under the above-stated general rule, if the court has no other source of jurisdiction, the court could decline to exercise its supplemental jurisdiction and dismiss the defamation

claim without determining whether the plaintiff has stated sufficient facts to defeat a Rule 12(b)(6) motion as to that claim.

But federal courts have an independent obligation to assure that jurisdictional requirements are satisfied. See, *e.g.*, Ware v. Best Buy Stores, L.P., 6 F.4th 726, 731 (7th Cir. 2021) (quoting Knopick v. Jayco, Inc., 895 F.3d 525, 528 (7th Cir. 2018)). There is another possible source of original jurisdiction, one the plaintiff did not articulate. District courts have original jurisdiction over civil cases where the matter in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. §1332. The amended complaint alleges that the plaintiff is "domiciled" in Wisconsin and that the defendant is an Arkansas corporation doing business in Indiana. Dkt. No. 11 at ¶¶5, 6. It is possible that if the amount in controversy for the defamation claim exceeds $75,000, the court may have diversity jurisdiction. But the amended complaint does not plead an amount in controversy for the defamation claim; the prayer for relief divides the damages request by claim and seeks $6,325,500 damages for violation of 42 U.S.C. §1981 and "general damages," "punitive damages" and "emotional harm" for the defamation claim. Id. at 7-8.

To determine whether it has diversity jurisdiction, the court would require more information from the plaintiff. It could ask the plaintiff to file an amended complaint alleging an amount in controversy for the defamation claim or hold an evidentiary hearing asking the plaintiff to provide such evidence. The court concludes, however, that it would be futile to take either action because the plaintiff has not stated a claim for defamation.

The court disagrees with the defendant that the plaintiff's failure to file a full-throated, well-reasoned and supported argument in opposition to its motion to dismiss the defamation claim supports dismissal of the claim. The Seventh Circuit has held that Rule 12(b)(6) "prevents courts from granting unopposed motions solely because there is no response." Marcure v. Lynn, 992 F.3d 625, 633 (7th Cir. 2021). Regardless of whether the plaintiff addressed the defendant's arguments, the court must evaluate the allegations in the amended complaint to determine whether the pleadings are sufficient to defeat a Rule 12(b)(6) motion.

With respect to the choice of law issue, the court begins with the law of the forum state. Bd. of Forensic Document Exam'rs, Inc. v. Am. Bar Ass'n., 922 F.3d 827, 831 (7th Cir. 2019). Under Wisconsin's choice-of-law rules, there is a presumption that the law of the forum state applies unless it is clear that the non-forum state has more significant contacts with the claims at issue. Drinkwater v. Am. Family Mut. Ins. Co., 290 Wis. 2d 642, 658 (Wis. 2006) (citing State Farm Mut. Auto Ins. Co. v. Gillette, 251 Wis. 2d 561, 588 (Wis. 2002)). In defamation cases, the plaintiff's home state may have the "most significant relationship" because that location is where the plaintiff suffers the most reputational harm. See Kamelgard v. Macura, 585 F.3d 334, 341 (7th Cir. 2009) (where the allegedly defamatory statement is communicated in many states, "it makes sense to apply the law of the plaintiff's domicile").

The plaintiff appears to concede, however, that Indiana law applies; she has not argued to the contrary and she has not alleged that any police report

or newspaper article was distributed or seen by anyone in Wisconsin. The events giving rise to the complaint all occurred in Indiana—the store is in Indiana, the defendant's employees allegedly made statements to law enforcement in Indiana and the "Local Newspaper" that allegedly picked up the report presumably is an Indiana publication. Aside from being the location of the plaintiff's "domicile," Wisconsin has no contacts with the claims. The court will apply Indiana law.

The amended complaint alleges the following:

> 47. That [the defendant], by its management made a false statement, or a set of false statements, with express malice and/or reckless disregard for the truth, namely that Plaintiff was a shoplifter.
>
> 48. That [the defendant], by its management made a false statement, or a set of false statements, with ill will and/or bad intent despite the truth, namely that Plaintiff was a shoplifter.
>
> 49. That the false statements were communicated to others, in speech and/or conduct.
>
> 50. That the communications were not privileged and were defamatory and tended to harm Plaintiff's reputation so as to lower her in the estimation of the community and/or deterred third persons from associating or dealing with her.
>
> 51. That as a result of the Defendant's actions the Plaintiff was harmed.

Dkt. No. 11 at ¶¶47-51.

Under Indiana law,

> [a] statement is defamatory if it "tends to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person." *Baker v. Tremco Inc.*, 917 N.E.2d 650, 657 (Ind. 2009). To prove defamation, a plaintiff must demonstrate: "(1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages." *Kelley v.*

> *Tanoos*, 865 N.E.2d 593, 596-97 (Ind. 2007). Indiana law separates defamation into two categories, depending on what is required to show damages. Defamation *per quod* involves words that "are not defamatory in themselves, but become so only when understood in the context of extrinsic evidence." *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 186 (Ind. 2010). Conversely, defamation *per se* imputes criminal conduct, loathsome disease, or professional or sexual misconduct without reference to extrinsic evidence. *Id.* To succeed on [a] claim of defamation *per se*, the statement must contain an "objectively verifiable fact regarding the plaintiff. If the speaker is merely expressing his subjective view, interpretation, or theory, then the statement is not actionable." *Meyer v. Beta Tau House Corp.*, 31 N.E.2d 501, 515 (Ind. Ct. App. 2015) (internal citation omitted).

Yeatts v. Zimmer Biomet Holdings, Inc., 940 F.3d 354, 359 (7th Cir. 2019).

The plaintiff's allegations fall into the defamation *per se* category. She has alleged that the defendant made statements about her that imputed criminal conduct—shoplifting.

> A statement is defamatory per se if it imputes "(1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct." *Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007). However, it is not enough that the statement carry with it one of those four defamatory imputations; rather, it must "constitute 'a serious charge of incapacity or misconduct in words so obviously and naturally harmful that proof of their injurious character can be dispensed with.'" *Moore v. Univ. of Notre Dame*, 968 F. Supp. 1330, 1334 (N.D. Ind. 1997) (quoting *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258 (Ind. 1994), *reh'g denied*). The offensiveness of the statements cannot be determined by how the plaintiff views the statement; the defamatory nature must be present in the nature of the words without any additional facts or circumstances to give context. *See id.*; *McQueen v. Fayette Cnty. Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. Ct. App. 1999), *trans. denied*; *Levee v. Beeching*, 729 N.E.2d 215, 220 (Ind. App. 2000) (remarks that principal was a "liar" and "favored some staff" were not defamatory per se because they required reference to previous personal attacks against the principal to gain their defamatory meaning).

In re Indiana Newspapers, Inc., 963 N.E.2d 534, 549-50 (Ind. Ct. App. 2012). "[D]amages are presumed for defamation per se." Wilkinson v. Sheets, No. 3:19-CV-902-RLM, 2021 WL 5771218, at *3 (N.D. Ind. Dec. 6, 2021) (citing Baker, 917 N.E.2d at 657).

The defendant insists that the court must dismiss the defamation claim because there is a privilege that applies under the circumstances the plaintiff alleges. Indiana recognizes "qualified privileges" applying to "communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he had a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." Williams v. Tharp, 914 N.E.2d 756, 762 (Ind. 2009) (quoting Bals v. Verduzco, 500 N.E.2d 1353, 1356 (Ind. 1992)). "As a defense to defamation," a qualified privilege does not mean that the words are not defamatory; it rebuts "the inference of malice that is [otherwise] imputed." Id. (quoting Holcomb v. Walter's Dimmick Petroleum, Inc., 858 N.E.2d 103, 106 (Ind. 2006)). One such qualified privilege "relates to the public interest in 'encourag[ing] private citizens and victims not only to report a crime, but also to assist law enforcement with investigating and apprehending individuals who engage in criminal activity." Id. (quoting Holcomb, 858 N.E.2d at 108). Based on this public interest, there is a "limited defense to civil liability premised on erroneous reports of criminal conduct to police." Id. at 763 (quoting Kelley, 865 N.E.2d at 601.

The problem with the defendant's argument is that assertion of a qualified privilege is an affirmative defense. Gillaspy v. Club Newtone, Inc., No. 4:20-CV-13-TLS-APR, 2021 WL 3701463, *4 (N.D. Ind. Aug. 19, 2021). "Affirmative defenses do not justify dismissal under Rule 12(b)(6)." Benson v. Fannie May Confections Brands, Inc., 944 F.3d 639, 645 (7th Cir. 2019) (quoting Doe v. GTE Corp., 347 F.3d 655, 657 (7th Cir. 2003)). The plaintiff is not required to plead around an anticipated affirmative defense. Doe, 347 F.3d at 657.

So the court turns to the elements of the defamation claim. If the plaintiff had sued for defamation in Indiana state court, she would have been required to "specifically identify both the alleged defamatory statements and the speaker of those statements, specifically attributing each statement to each separately named defendant." Taylor v. Antisdel, 185 N.E.2d 867, 874 (Ind. Ct. App. 2022) (citing Ali v. Alliance Home Health Care, LLC, 53 N.E.2d 420, 428 (Ind. Ct. App. 2016). Federal courts do not impose such a heightened pleading standard, but the Indiana standard illustrates the fact that here, the plaintiff has not identified who allegedly made the defamatory statements. She alleges that "[the defendant's] agents contacted local law enforcement," dkt. no. 11 at ¶33, and that "upon information [the defendant's] agents reported" the shoplifting allegations to a local paper, id. at ¶34. The plaintiff has not alleged that whoever gave her "disproportionate scrutiny" in the store called the police or the newspaper and told them she was a shoplifter. She has not alleged that whoever assisted her in the check-out line called the police or the newspaper

and told them she was a shoplifter. She has not alleged that whoever stopped her and required her to remove her items from her shopping bags called the police or the newspaper and told them she was a shoplifter. The plaintiff says only that "[the defendants's] agents contacted law enforcement as she was completing her checkout and falsely reported her as a shoplifter." Dkt. No. 11 at ¶20. So, while Indiana law requires the plaintiff to allege a communication with "defamatory imputation," the plaintiff has not alleged who made the communication or communications of which she complains.

The plaintiff also must allege that the communication was made with "defamatory imputation." The plaintiff has satisfied that requirement; she alleges that the speech related to one of the *per se* categories—criminal conduct—which carries a defamatory imputation. See Pierson v. Nat'l Inst. for Labor Relations Research, 319 F. Supp. 3d 1100, 1106 (N.D. Ind. 2018).

The next element of an Indiana defamation claim is malice. Under Indiana law, "[a]ctual malice is not a required element of a defamation claim between private individuals unless the alleged defamatory statements relate to a matter of public concern." Graber v. Turpen, 179 N.E.3d 1060, 2021 WL 6140589, at *6 (Ind. Ct. App. Dec. 30, 2021) (citing Charles v. Vest, 90 N.E.3d 667, 672 (Ind. Ct. App. 2017)). In suits between private individuals that do not relate to matters of public concern, the plaintiff must allege only negligence. Wilkinson, 2021 WL 5771218, at *3 n.1 (citing State Farm Fire & Cas. Co. v. Radcliff, 987 N.E.2d 121, 138 (Ind. Ct. App. 2013); Journal-Gazette Co. v. Bandido's, Inc., 712 N.E. 446, 452-53 (Ind. 1999)).

Neither party has alleged that the plaintiff is a public figure. That leaves the question of whether the speech related to a matter of "public concern." "[S]peech relates to a matter of public concern if it is addressed to 'any matter of political, social, or other concern to the community, as determined by i[t]s content, form, and context." Daly v. Nexstar Broadcasting, Inc., 542 F. Supp. 3d 859, 870 (S.D. Ind. 2021) (quoting Gresk for Est. of VanWinkle v. Demetris, 96 N.E.3d 564, 571 (Ind. 2018)). "Determining whether an issue is a matter of public concern is a question of law." Id. (citing Brewington v. State, 7 N.E.3d 946, 962 (Ind. 2014)).

The plaintiff's allegations imply that the speech related to a matter of public concern. She alleges that not only did the defendant contact the police, but it contacted a local newspaper and that the local newspaper published the fact that the plaintiff had shoplifted. Dkt. No. 11 at ¶¶34-35. Given that, the plaintiff must allege facts that support a showing of actual malice to state a defamation claim. "Actual malice exists when the defendant publishes a defamatory statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" Daly, 542 F. Supp. 3d at 871 (quoting Bandido's, 712 N.E.2d at 456; New York Times Co. v. Sullivan, 376 U.S> 254, 279-80 (1964)).

As explained earlier, the plaintiff has not identified who contacted the police. It is not clear from her allegations that anyone from the defendant's store contacted the unidentified local paper; if someone from the store did contact the paper, the plaintiff has not identified who did so. The plaintiff

assumes that whoever contacted the police knew that she had not shoplifted. But she also insists that whoever contacted the police did so *before* she was stopped and asked to empty her shopping bag of items. This implies that whoever contacted the police did so before anyone had had a chance to ascertain whether the plaintiff had taken anything for which she had not paid. If that is the case, the person or persons who called the police would not have had reason to know that the statement that the plaintiff was a shoplifter was false. And as the court has noted, the amended complaint does not make clear whether the defendant's employees contacted the paper at all.

In the original complaint, the plaintiff alleged that after being stopped, she asked the manager why she was the only person being stopped and that the manager told her it was company policy. Dkt. No. 1 at ¶14. In the amended complaint, the plaintiff alleges that she asked the manager why she was the only person being stopped "and why white customers were allowed to exit freely," and that the manager replied that it was company policy. Dkt. No. 11 at ¶23. This allegation leads the plaintiff to allege that the manager "and/or agents identified a racially based policy," then searched the items she'd purchased. Id. at ¶26.

Even if the court were to assume that the defendant had a policy of searching the bags of Black customers and not those of white customers, that alleged policy did not constitute a communication with defamatory imputation of shoplifting. It constituted the manager's answer to the plaintiff's question about why she was being stopped. The plaintiff implies that because the

defendant had an allegedly discriminatory policy regarding searching Black customers, any statements its employees made to law enforcement or the press about the plaintiff being a shoplifter were made with actual malice. That link is too tenuous to allow the court to conclude that the plaintiff has stated facts that support actual malice.

To state a claim for defamation, the plaintiff needed to allege that the person making the report to law enforcement and/or the local newspaper (if that happened) knew that the plaintiff was not a shoplifter or acted with reckless disregard to whether she was a shoplifter in reporting that fact to law enforcement or the paper. The plaintiff has not done so.

So—even if the plaintiff intended to allege diversity jurisdiction and even if she could satisfy the amount-in-controversy requirement, the court finds that the plaintiff has failed to state a defamation claim under Indiana law.

## IV. Amendment

Rule15(a)(1) allows a party to amend her pleading once as a matter of course within twenty-one days after serving it or within twenty-days after service of the responsive pleading. The court's May 17, 2021 order gave the plaintiff the opportunity to amend in lieu of responding to the first motion to dismiss. Dkt. No. 10. The plaintiff did so. Dkt. No. 11. The plaintiff now has had two opportunities to state her claims and was represented by counsel for both of those opportunities. The plaintiff's §1981 claim is contrary to Seventh Circuit and Eastern District of Wisconsin law. The plaintiff failed to allege diversity jurisdiction sufficient to allow her stand-alone defamation claim to

survive and has failed to state a claim for defamation under Indiana law. And the court has not even addressed the question of why the plaintiff brought this claim in the Eastern District of Wisconsin, when under the venue statute venue is proper in a judicial district in which the defendant resides or in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. §1391(b). Although Rule 15(a)(2) says that courts should "freely give leave" to amend "when justice so requires," justice does not require that the court grant such leave under these circumstances.

## V. Conclusion

The court **GRANTS** the defendant's motion to dismiss the amended complaint. Dkt. No. 12.

The court **ORDERS** that this case is dismissed. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 24th day of August, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**